COMMONWEALTH of Kentucky, CAB-INET FOR HEALTH & FAMILY SERVICES, Next Friend of M.H., an Infant, Appellant,

v.

R.H.; K.H.; and M.H., a Child, Appellees.

No. 2005–CA–002315–ME.

Court of Appeals of Kentucky.

July 7, 2006.

Ordered Published Aug. 11, 2006.

As Modified Aug. 18, 2006.

Terry I. Morrison, Lexington, KY, for appellant.

Stephen L. Marshall, Lexington, KY, for appellees.

Before COMBS, Chief Judge; MINTON, Judge, HUDDLESTON,[1] Senior Judge.

## OPINION

COMBS, Chief Judge.

The Cabinet for Families and Children appeals from the October 18, 2005, order of the Floyd Family Court dismissing its dependency, neglect, and abuse petition. The Cabinet also appeals from an August 25, 2005, pre-trial order that prohibited the Cabinet from introducing evidence related to the seven siblings of M.A.H.—all of whom have been removed from their parents' custody. The appellees are R.H. and K.H., M.A.H.'s biological parents. After careful review, we vacate the order and remand for proceedings consistent with this opinion.

On January 5, 2005, Jaime Welch, a social worker with the Cabinet for Families and Children, filed a juvenile dependency, neglect, and abuse petition in the Floyd Family Court on behalf of M.A.H., an infant. The petition recited that the infant was believed to be at risk of harm because of a history of "substantiated sex-

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

ual abuse, physical abuse and neglect as well as ... domestic violence." The petition also stated:

> The seven siblings of the aboved (sic) named child have been removed from the custody of the parents and are currently committed to CHFS/DPP with a goal of adoption. At the time of the aboved (sic) named child's birth, the mother provided Cabell Huntington Hospital with a West Virginia address. West Virginia Department of Health and Human Resources (sic) filed a petition obtaining custody of aboved (sic) named child, however, child could not be located and the father notified West Virginia Department of Health and Human Services that the family was returning to Kentucky to their previous address.

On the same date as the filing of the petition, the court entered an emergency custody order temporarily placing M.A.H. in the custody of the Cabinet. However, K.H. never relinquished custody of the child, and she was permitted by the court to reside with the child at the home of a local pastor.

On February 28, 2005, at a temporary removal hearing, the family court entered an order permitting K.H. to return with the child to live with R.H. Both the Cabinet and the child's guardian *ad litem* objected.

On March 4, 2005, the Cabinet filed a notice of its intent to introduce evidence at the upcoming adjudication hearing concerning the removal of M.A.H.'s seven siblings from their parents' custody. In a responsive memorandum, K.H. and R.H. conceded that the family history of abuse and neglect was relevant to the court's determination of whether M.A.H. was at risk for harm. Nonetheless, they argued that the Cabinet was barred by the doctrine of *res judicata* from introducing any evidence related to the prior sexual abuse of M.A.H.'s siblings.

The family court agreed and entered an order prohibiting the Cabinet from introducing evidence of "sexual abuse against the siblings of [M.A.H.] perpetrated by the parents, [R.H. and K.H.]." Following an adjudication hearing, the family court concluded that the Cabinet had failed to prove—by a preponderance of the evidence—the truth of the allegations contained in its petition. The action was dismissed, and this appeal followed.

The Cabinet argues that the family court erred by excluding evidence related to the removal of M.A.H.'s siblings following a substantiated claim of sexual abuse perpetrated against at least one of them. We agree.

The Cabinet has been involved with the protection of the appellees' children for many years. Its history with the family began in late 1999 when it learned that R.H. had padlocked K.H. and his three daughters inside the family's trailer home and left them for two days. K.H. was subsequently arrested on a bench warrant issued because she had allowed R.H. back into the home with the children.

The Cabinet was ultimately granted permanent custody of M.A.H.'s seven siblings in dispositional proceedings concluded in February 2004. The Johnson Family Court's 2001 adjudication order in favor of the Cabinet was based upon a finding that some of the children had been severely physically abused; that domestic violence had occurred in the home; and that acts of sexual abuse had occurred. The court's dispositional order was affirmed by this court in an October 2005 opinion that catalogued the extensive evidence of abuse perpetrated against the appellees' children.

KRS [2] 620.100(3) provides that the Commonwealth bears the burden of proving dependency, neglect, or abuse of a child by a preponderance of the evidence. KRS 600.020(1) defines an "abused or neglected child" as follows:

"Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child:

(a) Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;

(b) Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

(c) Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child including, but not limited to, parental incapacity due to alcohol and other drug abuse as defined in KRS 222.005;

(d) Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

(e) Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;

(f) Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child;

(g) Abandons or exploits the child; or

(h) Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being. A parent or other person exercising custodial control or supervision of the child practicing the person's religious beliefs shall not be considered a negligent parent solely because of failure to provide specified medical treatment for a child for that reason alone. This exception shall not preclude a court from ordering necessary medical services for a child; or

(i) Fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining the foster care for fifteen (15) of the most recent twenty-two (22) months.

The family's lengthy history of abuse or neglect was particularly relevant in this adjudication proceeding—as the appellees have acknowledged. In light of the history of the evidence in this case, it was critically important to weigh the issue of whether either of the parents had created or had allowed to be created a risk that an act of sexual abuse would be committed upon M.A.H. Accordingly, the pre-trial decision of the court to prevent the Cabinet from introducing the relevant evidence was highly relevant to the adjudication.

On appeal, we must decide whether the family court erred in concluding that the Cabinet could not introduce the evidence. The court believed that *res judicata* bars its admission based on a 2001 finding of the Johnson Family Court that an act of sexual abuse had been perpetrated against M.A.H.'s older sibling and that such evidence cannot be used now to determine whether M.A.H.'s welfare may be threatened by a risk of similar sexual abuse.

2. Kentucky Revised Statutes.

The family court held that the evidence was "precluded from admission by the doctrine of res judicata and the subdoctrine of issue-preclusion." The court cited *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459 (Ky.1998). In *Yeoman*, the Supreme Court of Kentucky defined the doctrine of *res judicata* to be the conclusive effect of an existing final judgment rendered upon the merits by a court of competent jurisdiction. The court defined "issue preclusion" as a subpart of the doctrine and explained as follows:

> For issue preclusion to operate as a bar to further litigation, certain elements must be found to be present. First, the issue in the second case must be the same as the issue in the first case. Second, the issue must have been actually litigated. Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman*, 983 S.W.2d at 465.

The appellees contend that the failure of the Johnson Family Court to make a finding (in its 2001 order) with respect to the specific identity of the perpetrator of the sexual abuse amounts to a determination that there was insufficient evidence to conclude that R.H. was the abuser. They argued that such an inferred finding prevents the Cabinet from raising the issue of the appellees' sexual abuse of M.A.H.'s siblings (or any of them) in the current proceedings.

We do not agree that the elements of issue preclusion have been established. It is worthy of argument to contend that there was an identity of issues in both proceedings and that the issue was litigated in the prior proceeding. However, the issue was **not actually decided** in that proceeding.

At the time of the February 2001 adjudicatory proceedings, M.A.H.'s siblings identified both R.H. and K.H. as perpetrators of the sexual abuse that they had suffered. Following the hearing, the Johnson Family Court found that physical abuse had occurred; that an act of sexual abuse had occurred; and that domestic violence had occurred in the home. As a result, the children were ordered to remain outside the home, and a dispositional hearing was scheduled for March 2001. In May 2002, M.A.H.'s siblings were eventually returned to K.H. on the condition that R.H. be kept out of the house. In December 2002, emergency custody orders were entered removing the children from the home again because R.H. was present. The court also found specifically that one of the children had been exposed to sexual abuse. In October 2003, the case was transferred from Johnson County to the Floyd Family Court. M.A.H.'s seven siblings were permanently removed from the appellees following the proceedings concluded in February 2004.

As the appellees have noted, the Johnson Family Court declined to name the perpetrator of the sexual abuse in its 2001 order perhaps because it believed that the identity of the offender was not essential or necessary to the proceedings. In order for the court to conclude that a child has been abused or neglected, the statute requires a finding that a parent or guardian has created or allowed to be created a risk that the child will be the victim of sexual abuse or exploitation. The identity of the perpetrator of the abuse is not material to that finding.

We cannot agree that the Cabinet is barred by the doctrine of issue preclusion

from introducing evidence that might identify R.H. as the perpetrator of the prior sexual abuse. This evidence is highly relevant to establish whether M.A.H. is an abused or neglected child.

We vacate both the pretrial order prohibiting the introduction of the disputed evidence and the order dismissing the original petition. We remand this matter for an expedited adjudicatory hearing conducted pursuant to the provisions of KRS 620.100(3).

ALL CONCUR.