v.

CABINET FOR HEALTH AND FAMI-
LY SERVICES, Commonwealth of
Kentucky; J.S.; and L.J.S., By and
Through Appointed Guardian Ad Li-
tem, Hon. Donna M. Bloemer, Appel-
lees/Cross–Appellants.

Nos. 2012–CA–001797–ME,
2012–CA–002061–ME.

Court of Appeals of Kentucky.

Jan. 3, 2014.

Lisa M. Wells, Covington, KY, for Appellant/Cross–Appellee.

Kelly Sensel Wiley, Covington, KY, for Appellees/Cross–Appellants.

Before LAMBERT, TAYLOR, and VANMETER, Judges.

## OPINION

VANMETER, Judge:

D.L.B. ("mother") appeals, and the Cabinet for Health and Family Services cross-appeals, from the Kenton Circuit Court judgment which involuntarily terminated mother's parental rights with respect to her four children. After review of the record and applicable law, we affirm in part, reverse in part, and remand. Specifically, we affirm the portion of the family court's judgment which involuntarily terminated mother's parental rights, but reverse the portion of the judgment which voluntarily terminated J.S.'s ("father") parental rights and dismissed him from the involuntary termination action. On remand, the family court is directed to conduct an involuntary termination hearing with respect to father's parental rights or otherwise comply with the statutory procedures governing voluntary termination of parental rights.

This matter came before the family court upon the Cabinet's petition for involuntary termination of mother's and father's parental rights to their four children. At the outset of the termination hearing, counsel for father represented to the court that counsel had filed "voluntaries" on behalf of father and, as a result, father was not present at the hearing. The Cabinet objected to the voluntary termination of father's parental rights, arguing that it wished to prove its case against

father in the involuntary termination action and to make a record for purposes of any future proceedings involving father, concerning these children or any other children. The family court overruled the Cabinet's objection, finding that father had executed an AOC[1] Form 292[2] indicating that he wished to voluntarily terminate his parental rights. The court then dismissed father and his counsel from further proceedings. Following a two-day hearing, the family court determined that mother's parental rights should be involuntarily terminated and entered a judgment accordingly. This appeal and cross-appeal followed.

On appeal, mother contends that the grounds for termination, enumerated in KRS[3] 625.090, were not proven and thus the family court improperly terminated her parental rights. We disagree.

■ Although no evidence was introduced to establish that the children had been abused by their parents, which is a basis for termination under KRS 625.090(1), the evidence did show that the children had been neglected, which is also a basis for termination.[4] This finding, coupled with the family court's conclusion that termination would be in the children's best interests, KRS 625.090(1), and that mother had failed to provide essential parental care and protection, KRS 625.090(2)(e), and was incapable of providing those necessities, KRS 625.090(2)(g), was sufficient to support the court's decision to involuntarily terminate mother's parental rights. Mother's claim that the grounds for termination were not proven is without merit.

■ Proceeding to the Cabinet's claims on cross-appeal, the Cabinet first argues that the family court's conversion of the involuntary termination action into a voluntary termination action, and concurrent dismissal of father from the proceedings, was an abuse of its discretion. We agree.

A parent seeking voluntary termination of parental rights must file a verified petition in the circuit court. KRS 625.040(2). The petition shall contain certain information including, but not limited to, the "[n]ame and address of the person or of the cabinet or authorized agency to which parental rights are sought to be transferred[.]" KRS 625.040(2)(e). The petition must also contain "[a] statement that the person, cabinet, or authorized agency to whom custody is to be given has facilities available, [and] is willing to receive the custody of the child ..." KRS 625.040(2)(f). The statute permits counsel for the parent to file the petition so long as the Appearance–Waiver and Consent–to–Adopt forms are signed by the parent, counsel, and Cabinet pursuant to KRS 625.041(3)–(4). KRS 625.040(1).

In this case, father failed to comply with the statutory procedure for voluntarily terminating his parental rights. He did not file a verified petition with the circuit court, and the Cabinet's signature was absent from the Appearance–Waiver and Consent forms he executed. Without the filing of a petition, and the Cabinet's signature on the aforementioned forms, crucial information is absent from the record, including whether the person or agency to

---

1. Administrative Office of the Courts.

2. AOC Form 292 is titled "Appearance Waiver and Consent to Adoption" and may be filed in conjunction with a petition for voluntary termination of parental rights.

3. Kentucky Revised Statutes.

4. The family court's finding that father had repeatedly sexually abused the children and that mother was aware of his conduct, thereby inflicting emotional harm upon the children by allowing the abuse to continue, was unsupported by the record.

receive the children has facilities, or is even willing, to receive the children. Furthermore, the Cabinet objected to the family court's voluntary termination of father's parental rights, arguing that it wished to make its case against father for purposes of any future proceedings. *See* KRS 625.090(2)(h)(1) (evidence that a parent's parental rights to another child have been involuntarily terminated is grounds for involuntary termination of parental rights).

We believe the family court abused its discretion by voluntarily terminating father's parental rights in this instance. On remand, the court shall make father a party to the involuntary termination action and shall conduct a termination hearing or otherwise proceed in compliance with the statutory guidelines regarding any possible voluntary termination of father's parental rights.

 Since the evidentiary claims of error raised by the Cabinet in its cross-appeal may arise on remand, we will briefly address them. The appellate standard for reviewing a trial court's evidentiary rulings is abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.*

 The Cabinet first argues that the family court abused its discretion by excluding testimony from the children's treating therapist regarding the children's out-of-court disclosures to the therapist about abuse they suffered at the hands of their parents. We agree.

The family court held that the children's out-of-court statements to the therapist were inadmissible hearsay pursuant to KRE [5] 803(4) and *Colvard v. Common-*

*wealth*, 309 S.W.3d 239 (Ky.2010). While we agree with the family court on that point, we find the therapist's testimony was admissible under KRE 803(3), the "state of mind" exception to the hearsay rule.

KRE 803(4) provides that "[s]tatements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis" are not excluded by the hearsay rule even though the declarant is available as a witness. In *Colvard*, an EMT, triage nurse, and treating physician of child victims testified at trial that the victims identified the defendant as the perpetrator of sexual abuse against them. *Colvard*, 309 S.W.3d at 243. On review, the Kentucky Supreme Court reversed Colvard's conviction, in part because the testimony of the medical personnel was inadmissible under KRE 803(4). *Id.* In so ruling, the Court reiterated the general rule that the identity of the perpetrator is not relevant to treatment or diagnosis and found that the children's identification of Colvard was not made "for the purpose of medical treatment or diagnosis" and thus was inadmissible. *Id.* at 244–46.

However, the Court clarified:

[W]e do not hold that statements of a child victim to medical personnel identifying an abuser are always inadmissible. There may be circumstances in which such statements will be found to comport with the requirements of KRE 803(4) or other exceptions to the hearsay rule. This, however, is not such a case.

*Id.* at 247.

Subsequent to the *Colvard* decision, and particularly relevant to the case at bar, the

---

**5.** Kentucky Rules of Evidence.

Kentucky Supreme Court in *Hammons v. Commonwealth*, 2010 WL 2471841 (Ky. 2010) (2008–SC–000260), held that a social worker/therapist's testimony at trial relaying the child victim's identification of the defendant as the perpetrator of sexual abuse was inadmissible under KRE 803(4) since the identification of the perpetrator was not pertinent to the child's medical diagnosis or treatment. *Id.* at *3. The Court found the therapist's testimony failed to actually relate the child's statements to any sort of medical (or even psychological) diagnosis or treatment, and the therapist failed to explain, even in general, her therapeutic or diagnostic purpose in treating the child, or what sort of treatment she provided. *Id.* Though in the present case, the children's treating therapist expounded upon her therapeutic purpose more so than the therapist in *Hammons*, we are unable to say that the therapist sufficiently related the children's disclosures to their specific medical treatment and diagnosis so as to make her testimony admissible under the KRE 803(4) exception to the hearsay rule. Thus, we believe the family court properly applied *Colvard* in excluding the therapist's testimony under KRE 803(4).

 That being said, the ruling in *Colvard* does not prohibit the admission of testimony regarding a child's identification of a perpetrator of abuse under other exceptions to the hearsay rule. *Colvard,* 309 S.W.3d at 247. The "state of mind" exception to the hearsay rule, KRE 803(3), allows for the admission of testimony concerning "the declarant's then existing state of mind, emotion, sensation, physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)...." In *Prater v. Cabinet for Human Res.*, 954 S.W.2d 954, 960 (Ky.1997), an action for involuntary termination of parental rights, the Kentucky Supreme

Court held that a foster parent's testimony of her observations of the children's out-of-court expressions of fear of dark rooms, hot baths, other persons' hands, and of having their diapers changed was admissible hearsay under KRE 803(3). And in *Crum v. Cabinet for Human Res.*, 928 S.W.2d 355, 357 (Ky.App.1996), also an action for involuntary termination of parental rights, a panel of this court held that the children's out-of-court disclosures of their parent's sexual abuse were admissible hearsay under KRE 803(3) since the statements were declarations revealing the children's state of mind. In so ruling, the court in *Crum* distinguished between a termination of parental rights action and a criminal case, and held that the children's hearsay statements would be inadmissible in the latter type of case. *Id.* The *Crum* court pointed to *L.K.M. v. Dept. for Human Res.*, 621 S.W.2d 38, 40 (Ky.App. 1981), another involuntary termination of parental rights action, in which this court held that the children's out-of-court statements were admissible under the "state of mind" exception to the hearsay rule.

Here, the Cabinet sought to introduce the testimony of the children's treating therapist regarding the children's out-of-court descriptions of the sexual/physical abuse and neglect committed by their parents. The therapist testified that negative disclosures made by a child about a parent, regardless of the veracity of the disclosures, are therapeutically significant because they demonstrate a poor attachment with the parent. The therapist further testified that these children's "belief systems" about their mother presented a barrier to reunification. The Cabinet sought to admit the therapist's testimony concerning the children's disclosures of abusive acts committed by their parents, not to prove that the acts occurred, but to show the emotional state of mind and mental health of the children and to demonstrate

the likelihood for improvement in the children's well-being if termination occurred.

■ In a termination of parental rights action, the family court is charged with determining whether termination would be in the child's best interests. Such a determination is made by considering the factors set forth in KRS 625.090, including whether the child has been abused or neglected by his or her parent. Evidence of prior acts of abuse or neglect by a parent towards a child, or the creation or allowance of a risk that an act of sexual abuse would be committed on a child, is highly relevant to a court's determination of whether the child is at risk for harm. *See Cabinet for Health & Family Servs. ex rel. M.H. v. R.H.*, 199 S.W.3d 201, 205 (Ky. App.2006) (evidence of a child's identification of parent as perpetrator of sexual abuse is highly relevant to establishing whether child has been abused or neglected and thus is admissible in termination proceeding). This "best interests" determination distinguishes a termination action from a criminal action and, consequently, from the circumstances in *Colvard.*

In this case, the children did not testify. Therefore, the therapist's testimony regarding their state of mind, especially as it pertained to their parents, was relevant in analyzing the children's "best interests" and in determining whether the children had been abused or neglected by their parents. We believe the family court abused its discretion by excluding the therapist's testimony to this effect since the testimony is admissible under the KRE 803(3) "state of mind" exception to the hearsay rule.

We further hold that the family court abused its discretion by sustaining mother's objection to the Cabinet's use of a Cabinet record, on redirect examination of a social worker, to refresh the witness's recollection pursuant to KRE 612. That rule provides that a writing may be used at trial to refresh a witness's memory and the opponent shall have the right to cross-examine the witness regarding the writing. On cross-examination of the social worker, mother asked what services had been offered by the Cabinet to address mother's sobriety problem—Alcoholics Anonymous program, drug screens, counseling, etc. The social worker, who began working on mother's case in 2010, was unable to recall whether a substance abuse assessment had been offered to mother prior to his commencement on the case, and stated that he would need to review the file to answer.

On redirect examination, the Cabinet gave counsel for mother a copy of the service recordings contained in the Cabinet file, which showed that mother was offered a substance abuse assessment. The Cabinet proceeded to hand the document to the social worker to refresh his recollection. At this point, mother objected, arguing that the Cabinet had failed to disclose this exhibit in accordance with the family court's pretrial order. The Cabinet clarified that it did not intend to offer the document as an exhibit, or introduce it into evidence. Rather, the Cabinet intended to use the document to refresh the social worker's recollection in order for him to answer mother's question. The Cabinet pointed out that mother had opened the door on cross-examination, and the Cabinet was therefore permitted to rebut mother's insinuation that no substance abuse assessment had been offered to mother. The Cabinet further argued that the service recordings were contained in the Cabinet file, to which mother had unfettered access throughout the proceedings.

■ The family court sustained mother's objection on the basis that the Cabinet had not identified the document as an exhibit before trial. Yet, nothing in KRE

612 states that the writing used to refresh the witness's memory must be turned over in advance of trial as an exhibit or that the witness must have prepared the writing himself. Indeed, case law has established that the writing used to refresh is not to be considered as an exhibit. *See Berrier v. Bizer,* 57 S.W.3d 271, 277 (Ky.2001) ("[t]he resulting evidence is the product of the refreshed memory, not the writing used to refresh it; thus, the writing is not introduced into evidence and there is no involvement of the hearsay rule."); *Disabled Am. Veterans v. Crabb,* 182 S.W.3d 541, 552 (Ky.App.2005) ("[b]ecause the writing is only being used to refresh memory ... [it] never acquires independent status as evidence in the case.") (Internal quotations omitted). Thus, the fact that the Cabinet did not disclose the document as an exhibit pretrial is not a basis for excluding its use for purposes of refreshing a witness's recollection.

In addition, the Cabinet's rebuttal was permissible since mother's question on cross-examination created a basis for the inquiry. *Brown v. Commonwealth,* 174 S.W.3d 421, 431 (Ky.2005).[6] Although this issue may be moot on remand, since by now the social worker's recollection is most likely refreshed, we nonetheless clarify that the family court should have allowed the Cabinet to refresh the social worker's recollection with this document.

In conclusion, we hold that the family court abused its discretion by (1) voluntarily terminating father's parental rights, (2) excluding the therapist's testimony concerning the children's out-of-court disclosures, and (3) prohibiting the Cabinet from refreshing the recollection of its witness on redirect examination.

6. We decline to address whether the document was admissible under the "business records" exception to the hearsay rule, KRE

The judgment of the Kenton Circuit Court is affirmed in part, reversed in part, and this case is remanded for further proceedings.

ALL CONCUR.

803(6), since the Cabinet never proffered it as evidence.