RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0488-DGE

B.B.                                                                          APPELLANT

|         | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | NOS. 2019-CA-1791; 2019-CA-1792; 2019-CA-1794 |

FRANKLIN CIRCUIT COURT NOS.19-J-00065, 00065-001, 00066,
00066-001, 00067-001

COMMONWEALTH OF KENTUCKY,                                    APPELLEE
CABINET FOR HEALTH AND FAMILY
SERVICES; M.B.; J.B.; S.B.; and S.B.,
MOTHER

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

This case concerns dependency, neglect, and abuse ("DNA") petitions in Franklin Circuit Court. The trial court found that the natural, minor children of B.B. ("Father"), the Appellant, were abused or were at risk of being abused while in his care pursuant to KRS[1] 600.020(1)(a)(5). Father raises two issues on appeal. First, Father argues that the trial court erred in admitting part of the testimony of his youngest child's therapist, which described the alleged abuse and which also named Father as the perpetrator. Father contends that such testimony did not meet the hearsay exception KRE[2] 803(4)—the so-called

---

[1] Kentucky Revised Statute.

[2] Kentucky Rule of Evidence.

"medical treatment" exception. Second, Father argues that the trial court erred in not giving greater weight to the grand jury findings of "no true bill" when they were submitted as evidence at the adjudication hearing. The Court of Appeals affirmed the trial court's orders finding no abuse of discretion in the issues raised by Father.

For the following reasons, we affirm.

## I. Factual and Procedural Background

B.B. is the biological father of three minor children—M.B., S.B., and J.B.[3] Father and the natural mother ("Mother") of the children married in 2007 and divorced in 2017. At the time of the incidents at issue, the parents had joint custody of the children with approximately equal timesharing. By Mother's own admission, she and Father had an amicable co-parenting relationship until May 2018. At that time, M.B. was ten years old, S.B. was seven years old, and J.B. was four years old.

On May 4, 2018, J.B. ("Child") returned to Mother's home after a visit with Father. Child complained of pain around her vaginal area. Later that same day, Child complained of pain while urinating. Mother asked Child if anyone had touched her in the vaginal area. Child stated that Father had touched her there on multiple occasions. Mother immediately reported the alleged sexual abuse of Child by Father to the Franklin County Sheriff's Office ("FSCO"). The FSCO referred the allegations to the Franklin Department for Community

---

[3] To protect the identity of the parties, we will us their initials to identify them unless otherwise indicated.

2

Based Services ("Cabinet"). All three children were removed from Father's care pursuant to a prevention plan created by the Cabinet.

On May 11, 2018, Mother took Child to be examined by her pediatrician, Dr. Suresh Saxena ("Dr. Saxena"), pursuant to the Cabinet's instructions. Dr. Saxena diagnosed Child with vaginitis or vulva vaginitis, described as redness around the perianal and vaginal area.

On May 14, 2018, Child completed a forensic interview and examination at the Child Advocacy Center of the Bluegrass ("CAC"), a nonprofit organization dedicated to reducing the trauma experienced by child victims of sexual abuse. During the interview, Child again repeated that Father rubbed her vagina while she was lying in bed and that he tickled her vagina when sitting in his lap. Dr. Jacqueline S. Sugarman ("Dr. Sugarman"), the Medical Director of CAC, performed the forensic examination. Dr. Sugarman reported that she could neither confirm nor deny that sexual abuse had occurred. On June 7, 2018, M.B. and S.B. were interviewed by CAC about the abuse allegations. Both M.B. and S.B. denied being abused and stated they had not witnessed abuse by Father at any time.

On March 5, 2019, however, S.B. told Mother that that he had witnessed the sexual abuse alleged by Child. He was promptly interviewed again by CAC on March 11, 2019. In his second interview, S.B. confirmed that he had witnessed Father touching Child in an inappropriate way. S.B. further disclosed that Father had given Child a popsicle in exchange for not telling anyone about the abuse. Shortly thereafter, on March 22, 2019, the Cabinet

filed petitions initiating the dependency, neglect, and abuse actions (the "Petitions").

While pursuing the Petitions, the Commonwealth of Kentucky ("Commonwealth") presented an allegation of abuse against Father to the Franklin County Grand Jury ("Grand Jury") on two separate occasions. On January 22, 2019, the offense of criminal abuse, first degree was submitted for consideration. It resulted in a "no true bill." After S.B. changed his testimony, the Commonwealth again presented this matter to the Grand Jury seeking a charge of sexual abuse, first degree, victim under 12 years of age. A "no true bill" was returned for the second time. During this same time frame, Mother alleged that Father had sexually assaulted her during their marriage. The Commonwealth presented the charge of rape, first degree on October 30, 2018. The Grand Jury returned a "no true bill" on this matter as well.

On September 20, 2019, the Franklin County Circuit Court held an adjudication hearing for the allegations contained in the Petitions. The trial court heard testimony from the Cabinet's investigative worker, Valerie Nally ("Nally"). She testified that while Child's behavior[4] as reported by Mother indicated sexual abuse, Nally never witnessed the alleged behavior of the Child personally. However, Mother did show Nally a video of Child sexually acting out on dolls, which caused Nally concern. In the course of her investigation, Nally

---

[4] Mother told Nally that Child exposed her vagina and exhibited aggressive behavior toward her siblings.

did not speak to any other family members, including Father, about the alleged abuse and Child's subsequent behavior.

Dr. Saxena testified next. She confirmed the diagnosis of vaginitis. Dr. Saxena testified that vaginitis was a common diagnosis in children of Child's age due to poor hygiene habits; however, it could also have been caused by the rubbing of the vaginal area as described by Child.

The trial court also heard testimony from Kelly Dykus ("Dykus"), a licensed therapist. Dykus received her trauma therapy license in 2012. Mother took Child to Dykus after the abuse allegations had been made. Dykus testified that she had diagnosed Child with post-traumatic stress disorder for an individual under six years of age ("PTSD"). She based this diagnosis on Child's behavioral issues. These issues were reported to Dykus by Mother and Child during their sessions. Over Father's objection, Dykus testified that Child[5] told her that Father had once touched her vagina and inserted a "slimy stick" in her rectum. Dykus also witnessed Child inserting a pen into a doll's rectum during one of the sessions.

Both parents testified at the adjudication hearing. Father testified and consistently maintained his innocence regarding the abuse allegations. He explained that the "slimy stick" inserted into Child's rectum was most likely a suppository, which all three of the children had needed when they were little

_____

[5] Child did not testify at the hearing. In his brief, Father notes that there is no evidence that Child was incapable of testifying. However, there is no statutory requirement that a child testify at a DNA hearing. Nor did either party make a motion to have Child testify.

for medical reasons. Mother testified and confirmed that Child first reported the alleged abuse on May 4, 2018 and identified Father as her abuser.

On September 25, 2019, the trial court entered three orders finding that Child had been abused and that her brothers, M.B. and S.B., were at risk of abuse under Father's care. A disposition hearing was held on November 22, 2019. The parties were ordered to attend therapy with the goal of reunification. Father filed a timely appeal for the issues discussed herein after the Circuit Court's final disposition order.[6]

On September 4, 2020, the Court of Appeals affirmed the trial court's decision during the adjudication hearing in allowing Dykus' testimony to come in and not giving more weight to the Grand Juries' "no true bills." The Court of Appeals found Dykus' testimony was allowed under KRE 803(4), commonly known as the "medical treatment" exception to hearsay. Additionally, the Court of Appeals affirmed admission of Dykus' testimony identifying Father to come in by relying again on KRE 803(4) and *Colvard v. Commonwealth*, 309 S.W.3d 239 (Ky. 2010). Finally, the Court of Appeals found that the trial court did not abuse its discretion in giving little to no weight to the "no true bills" since the weight and credibility of any and all evidence is determined by the trial court. *Cabinet v. P.W.*, 582 S.W.3d 887, 896 (Ky. 2019). This appeal followed.

Additional facts are discussed below as necessary.

---

[6] Dependency, neglect, and abuse petitions are bifurcated proceedings—adjudication and disposition—pursuant to KRS 610.080. B.B. properly filed his notice of appeal after the completion of both the adjudication order and disposition order had been filed. *See M.C. v. Cabinet for Health and Family Services*, 614 S.W.3d 915, 921 (Ky. 2021).

6

## II. Standard of Review

In a DNA action, the trial court has a great deal of discretion in determining whether the child is dependent, neglected, or abused. *Cabinet for Health & Fam. Servs. v. K.S.,* 585 S.W.3d 202, 209 (Ky. 2019) (*See also M.P.S. v. Cabinet for Human Res.,* 979 S.W.2d 114, 117 (Ky. App. 1998)). Under CR[7] 52.01, a trial court's finding of fact "shall not be set aside unless clearly erroneous[.]" However, before considering whether the trial court's order met the clearly erroneous standard required in DNA petitions, we must consider the evidentiary issues which form the basis of this appeal. On evidentiary matters, the proper appellate standard of review is abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 576 (Ky. 2000). "The test for abuse of discretion is whether the court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. Padgett,* 563 S.W.3d 639, 645 (Ky. 2018) (internal citation omitted).

Additionally, "the trial court, as the finder of fact, has the responsibility to judge the credibility of all testimony, and may choose to believe or disbelieve any part of the evidence presented to it." *Cabinet for Health & Fam. Servs. v. P.W.,* 582 S.W.3d 887, 896 (Ky. 2019) (citing *Caudill v. Maloney's Disc. Stores,* 560 S.W.2d 15, 16 (Ky. 1977). If a trial court's findings of fact are supported by substantial evidence and the correct law is applied, the appellate court will not disturb the decision unless an abuse of discretion has occurred. *Cabinet for*

---

[7] Kentucky Rules of Civil Procedure

*Health & Fam. Servs. v. R.S.*, 570 S.W.3d 538, 546 (Ky. 2018) (internal citation omitted).

### III. Analysis

I. **Admissibility of Child's Out-of-Court Statements to Treating Therapist**

Father argues that the Court of Appeals erred in affirming the trial court's decision to admit parts of the testimony of Child's treating therapist, Dykus, during the adjudication hearing. First, Father contends that Child's statements to Dykus about the alleged abuse were inadmissible hearsay and that the exception found in KRE 803(4) does not apply. Second, Father argues that admitting the identity of the alleged perpetrator through hearsay testimony by Dykus was in error and not permissible under any exception.

In addressing these issues, a brief review of DNA hearings is necessary. KRS 620.100(2) provides that a child and her parent or guardian have a right to a full adjudicatory hearing to determine whether a child has or has not been abused. KRS 620.100(3) clarifies that "[t]he adjudication shall determine the truth or falsity of the allegations in the complaint. The burden of proof shall be upon the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence. The Kentucky Rules of Evidence shall apply."

Under KRE 801(c), "'[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is not admissible except as provided by these rules or by the rules of the Supreme Court of Kentucky."

8

KRE 802. Several exceptions exist, however, and the medical testimony exception, relied upon by the Court of Appeals below, provides for the admissibility of "[s]tatements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis." KRE 803(4).

We first address whether Dykus' testimony as to out-of-court statements made by the Child to Dykus about her abuse and related issues during treatment is admissible hearsay under KRE 803(4). Dykus testified that she was treating Child for psychological and related behavioral issues. During Child's therapy with Dykus, Child made several statements to Dykus about the abuse she suffered. Dykus testified that she believed that Child was sexually abused based on Child's statements and her own observations of Child's behavior. In one therapy session, Dykus witnessed J.B. insert an ink pen into a doll's rear-end. Child also told Dykus about nightmares involving her abuser. Both Mother and Child reported Child's aggressive, inappropriate behavior in public and within the home. This combination of reports and observation led Dykus to her PTSD diagnosis and to the development of the proper treatment plan for Child. Under the plain terms of KRE 803(4), the out-of-court statements of Child detailing her abuse, behavior, and feelings to Dykus were properly admitted. Such statements were essential for the diagnosis and treatment of Child's PTSD, and they clearly fit within the hearsay exception.

9

Turning to the specific issue of whether the trial court properly allowed Dykus' testimony that identified the Father as Child's abuser, we reiterate what was made clear over a decade ago, that "we no longer recognize a special exception to the hearsay rule which allows medical providers to testify in court to the hearsay statements of a victim of sexual offenses which identify the alleged perpetrator because that identification is not pertinent to the medical treatment being provided." *Colvard v. Commonwealth,* 309 S.W.3d 239, 247 (Ky. 2010) (overruling *Edwards v. Commonwealth,* 833 S.W.2d 842 (Ky. 1992). By rejecting the previous rule allowing such hearsay identifications, we did not entirely foreclose the possibility that there could be "circumstances in which such statements will be found to comport with the requirements of KRE 803(4)[.]" *Id.* But this dictum was vague and has proven exceedingly rare. *See Alford v. Commonwealth,* 338 S.W.3d 240 (Ky. 2011) (holding doctor's hearsay identification of abuser was palpable error though victim also testified to the same at trial); *Hoff v. Commonwealth,* 394 S.W.3d 368 (Ky. 2011) (holding doctor's hearsay identification of abuser was prejudicial error); *D.L.B. v. Cabinet for Health & Fam. Servs.,* 418 S.W.3d 426 (Ky. App. 2014) (affirming trial court's refusal to allow therapist's hearsay identification of parents as abusers under KRE 803(4)); *Edmonds v. Commonwealth,* 433 S.W.3d 309, 316 (Ky. 2014) (affirming trial court's ruling that a sexual assault nurse examiner could repeat hearsay statements that, in the totality of evidence, only indirectly identified the perpetrator and indirect identification was "inextricably intertwined" with normal sexual history questions pertinent to medical history

10

or diagnosis of sexual assault victims). Indeed, *Colvard* itself held that the hearsay identification of abusers by an EMT, triage nurse, and pediatrician were "highly prejudicial[.]" 309 S.W.3d at 247.

Instead, *Colvard* makes clear that in order to comport with the requirements of KRE 803(4), hearsay statements identifying an alleged abuser are "governed by a two-prong test: '(1) the declarant's motive in making the statement must be consistent with the purpose of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.'" *Id.* at 245 (internal quotations and citations omitted). The first prong of this test "is premised on the notion that a declarant seeking treatment has a selfish motive to be truthful because the effectiveness of medical treatment depends upon the accuracy of the information provided." *Id.* (internal quotations and citations omitted). The selfish motive is crucial because "it is the patient's desire for treatment, not the doctor's duty to treat, that gives the credibility to the patient's out-of-court statement." *Id.*

Child was only four years old when she first started seeing Dykus. She did not seek out treatment but was brought to treatment by Mother. Child did not testify at the DNA hearing, rather it was chiefly the testimony of Dykus and Mother, who simply testified to their own belief in the Child's allegations, that led the Court to allow the hearsay identification. In short, the record is devoid of any evidence that Child herself identified her Father to Dykus as her abuser due to a "selfish motive" to give a truthful account for the "purpose of

11

promoting treatment[.]" *Id.* Given these facts, the first prong of the *Colvard* test is unsatisfied. It was error for the trial court to assume Child had a selfish motive to give a truthful account in order to promote medical treatment or diagnosis without any evidentiary basis from Child herself.

The testimony of Mother that she taught her children from a young age the dangers of bad or inappropriate touching of private areas and the testimony of Dykus that she believed Child based on her observations of Child's behavior and statements will not suffice to cure the deficiency of evidence. "It is well-settled that a witness cannot vouch for the truthfulness of another witness." *Hoff,* 394 S.W.3d at 376. "In the context of child sex abuse cases, this Court has repeatedly held that no expert, including a medical doctor, can vouch for the truth of the victim's out-of-court statements." *Id.* Additionally, we have "held that social workers and psychologists are not qualified to testify that they believe a child has been sexually abused based on the child's demeanor." *Id.*

Finally, the argument that the identification of the perpetrator was necessary for Dykus to diagnose and treat Child's PTSD, including removal from the father's home, is unavailing. When *Colvard* rejected *Edwards*, it specifically identified this argument as underpinning the *Edwards* rule – "[i]n the *Edwards* case, we enlarged [the medical testimony] exception to include statements of a patient identifying the perpetrator of sexual abuse when that perpetrator is a member of the family or household of the victim… because the medical professional might use that information to protect the victim from further abuse by a member of the victims family or household." *Colvard,* 309

12

S.W.3d at 245. "[W]e failed to recognize that it is the patient's desire for treatment, not the doctor's duty to treat, that gives credibility to the patient's out-of-court statement." *Id.* Thus, we cannot accept the argument that identification is necessary for treatment – including removal from the home – without implicitly reviving *Edwards*. In rejecting the *Edwards* rule, we obviously also rejected the rationale behind it. The trial court and the Court of Appeals' reliance on KRE 803(4), to allow the identification of the perpetrator in this instance, was misplaced.

Although we conclude that Dykus' testimony identifying Father as Child's abuser was error, a finding of abuse pursuant to KRS 600.020(1)(a)(5) is dependent on whether a parent or guardian "commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child." It is not necessary under the statute for the specific abuser to be identified. The remainder of Dykus' testimony is admissible and the trial court properly relied upon it, in conjunction with other testimony, to find by a preponderance of the evidence that acts of sexual abuse were committed upon the Child when she was in Father's care and custody, and that her siblings were also at risk of sexual abuse. Thus, the trial court's error in allowing Dykus to name Father based on the out-of-court statement of Child in the adjudication hearing constitutes harmless error. RCr[8] 9.24; *Colvard,* 309 S.W.3d at 249 ("A non-constitutional evidentiary error may be deemed

---

[8] Kentucky Rules of Criminal Procedure

13

harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.").

## II.     Failure to Give More Consideration to the "No True Bills" Rendered by the Grand Jury

As mentioned previously, the Commonwealth presented allegations against Father to the Grand Jury on three separate occasions. All three times, the Grand Jury returned "no true bills". Father argues that the trial court failed to give proper weight to the findings when making its conclusions. Acknowledging that the admission and reliance of grand jury findings have not been reviewed in the context of DNA petitions, Father contends that parallels can and should be drawn between the admission and reliance on indictments in the context of revocation hearings and DNA petitions due to the same burden of proof in both actions.[9] The Commonwealth disagrees with Father's position and contends that the trial court gave proper and due consideration to the Grand Jury actions, which was "about nothing" by the trial court's own admission.

The determination of the weight and credibility of the evidence is within the trial court's discretion as factfinder. *See* CR 52.01; *P.W.*, 582 S.W.3d at 896. The standard of review is once again abuse of discretion as this is an evidentiary matter. To be reversed, the trial court's decision must have been

---

[9] Both revocation hearings and DNA petitions have the same burden of proof—preponderance of the evidence. *See Jones v. Bailey*, 576 S.W.3d 128, 146 (Ky. 2019); KRS 620.100(3).

"arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Padgett,* 563 S.W.3d at 645.

In this case, the trial court did admit and consider the grand jury findings. Relying on RCr 5.24(1)[10], the trial court gave the Grand Jury actions the weight it saw fit because the trial court could not be made aware of what had transpired at each of the grand jury proceedings. We conclude that the trial court did not abuse its discretion in failing to give weight to the "no true bills" returned by the Grand Jury when admitted for consideration at the adjudication hearing.

## IV. CONCLUSION

For the foregoing reasons, we affirm that the trial court did not abuse its discretion on either of the evidentiary matters brought forward on appeal, but we disagree on the specific issue of the identification of the alleged abuser. The orders of the Court of Appeals and Franklin Circuit Court are affirmed.

All sitting. All concur.

---

[10] RCr 5.24(1) states that "all persons present during any part of the proceedings of a grand jury shall keep its proceedings and the testimony given before it secret."

15

COUNSEL FOR APPELLANT:

Whitney True Lawson, Esq
True, Guarnieri Ayer, LLP


COUNSEL FOR APPELLEE:

Counsel for Commonwealth of Kentucky Cabinet for Health and Family
Services (Lead):
Ricky Eugene Sparks
Moira Mulligan Wingate
Franklin County Attorney's Office

Counsel for Appellee J.B. a minor:
Raven Necole Turner
McNamara & Jones

Counsel for Appellee M.B. a minor:
Raven Necole Turner
McNamara & Jones

Counsel for Appellee S.B. a minor:
Douglas Clifton Howard
Howard Law Group, PLLC

Counsel for Appellee S.B. a minor:
Raven Necole Turner
McNamara & Jones

Counsel for Cabinet for Health and Family Services Commonwealth of
Kentucky
Ricky Eugene Sparks
Moira Mulligan Wingate
Franklin County Attorney's Office