RENDERED: MAY 29, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1409-ME

SARAH ELIZABETH FISHER                          APPELLANT

v.                APPEAL FROM FAYETTE CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE ROSS EWING, JUDGE
ACTION NO. 24-D-01479-003

CALA MEIKLE; K.F., A MINOR
CHILD; AND M.F., A MINOR CHILD             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, A. JONES, AND MOYNAHAN, JUDGES.

EASTON, JUDGE: Appellant (Sarah) questions the Fayette Family Court's

decision which denied issuance of a Domestic Violence Order (DVO) against the

Appellee (Cala) on behalf of Sarah's minor children, M.F. and K.F. Sarah argues

the family court erred in not allowing the admission of hearsay testimony of the

children. After a thorough review of the record, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sarah is the children's mother. Cala is the girlfriend of the children's father (Brandon). Sarah and Brandon divorced in 2023, and Cala and her two children moved in with Brandon in 2024. Sarah and Brandon share joint custody of their children with an equal timesharing schedule.

This appeal results from the third DVO petition Sarah has filed on behalf of the children against Cala. The first petition was filed in October 2024 and was dismissed by the family court. The family court determined it would address Sarah's concerns in the dissolution matter. Due to the same issues which led to the filing of this DVO petition, the children's therapist, Anna Stephens, filed a report with the Cabinet for Health and Family Services (Cabinet). Ms. Stephens sees the children weekly, and she saw bruises on the children. Based on these bruises and the statements made to her by the children, Ms. Stephens determined that a Cabinet referral was necessary.

Due to the ongoing Cabinet investigation, the family court, in the dissolution action, entered an order in November 2024 that Cala was not allowed to be present for Brandon's timesharing with the children. In March 2025, the family court rescinded that order, because the Cabinet did not substantiate the abuse allegations against Cala.

In early May 2025, Sarah filed the second DVO petition against Cala, alleging the children claimed that Cala had repeatedly spanked, hit, and injured K.F., the younger child. The family court denied an Emergency Protective Order (EPO) as the first stage of that DVO petition and instead issued a summons for Cala to appear for a hearing. The family court also appointed a Guardian *ad Litem* (GAL) for the children.

Based on the same allegations as those in the second petition, Ms. Stephens filed a second report with the Cabinet. Robert Stith, the Friend of the Court (FOC) who had been appointed in Sarah and Brandon's dissolution action, also filed a Cabinet report based on his conversation with the children. Due to these reports, the children underwent interviews at the Children's Advocacy Center (CAC).

Sarah filed the third DVO petition on May 19, 2025, based on the same allegations as those in the second petition. This time, the petition was reviewed by the on-call judge, rather than the assigned family court judge. The on-call judge signed and entered an EPO that same day. Because the allegations of petitions two and three were identical, the family court dismissed trailer two in June 2025. All parties agreed to a continuance of the DVO hearing, as potential criminal charges were being investigated regarding the abuse allegations.

Prior to the DVO hearing, the parties and the GAL tendered an agreed order to allow the family court judge to watch the CAC interviews rather than have the children testify live at the hearing. The family court held the DVO hearing on September 3, 2025. Sarah called Ms. Stephens as her first witness. Ms. Stephens testified about her ongoing therapy with the children. She witnessed bruises on both children that she deemed concerning. She stated that, based on those bruises and what the children told her, she made reports to the Cabinet. Cala's counsel made a hearsay objection to Ms. Stephens testifying to what the children may have told her about Cala being the source of the bruising. After much back and forth, the family court determined the hearsay exception of KRE[1] 803(4) did not apply in these circumstances and did not allow the hearsay testimony.

Ms. Stephens testified that K.F. is terrified of Cala. She stated that while normally a bubbly, happy child, K.F. deflects and shuts down when anything is brought up about going to Brandon's house or having to see Cala. Ms. Stephens also testified as to a time when Brandon brought the children in for their appointment and showed her a video. Brandon had taken a video of the children while at the park, and it showed him asking an uncomfortable and leading question of why the children lied about Cala. Ms. Stephens stated the children appeared

---

[1] Kentucky Rules of Evidence.

very nervous and scared in the video, and this is not something she would have ever advised a parent to do in a situation like this.

Ms. Stephens stated her job as a therapist is to help children overcome whatever hurdles they may have. She generally believes what the children tell her. She was aware the first Cabinet report was unsubstantiated, but she did not have knowledge about the outcome of the second investigation. She acknowledged that she only knows what the children have told her about the source of the bruises.

Mr. Stith testified next. He spoke with the children after Sarah reached out to him about some concerns she had. The children showed him bruises they had on their arms. He confirmed he also made a Cabinet referral based on the bruises and the reports the children made to him. Mr. Stith also spoke with Ms. Stephens about her concerns. Upon questioning about what the children reported to Mr. Stith, Cala's counsel again objected based on hearsay, which was sustained by the family court. Mr. Stith had not issued a report specific to the allegations in the DVO proceeding or made any official recommendation about it.

Officer Raines with the Lexington Police Department also testified. He spoke with Sarah and the children. K.F. had returned from Brandon's home with visible injuries, which he documented. He informed Sarah she could seek an EPO on the children's behalf. He did not do a formal interview with K.F., based on her age and because a detective would be assigned later; he did not want K.F. to

have to make multiple statements to law enforcement. Officer Raines never met or spoke with Brandon or Cala.

Cala testified. She denied all allegations of abuse. She stated she never spanked or grabbed the children; she does not believe in physical discipline at all. Cala claimed Brandon disciplined his children, while she disciplined her own. She asserts the children received the bruises by normal playing; M.F. plays football and all the children roughhouse together.

At the conclusion of the hearing, the GAL again requested that the family court watch the CAC interviews rather than have the children testify. Further, the GAL did not believe K.F. was competent to testify and that her interview did not give any helpful information. She believed M.F.'s interview would give the family court the information it needed while also protecting him from testifying.

Sarah's counsel also agreed that K.F. was too young to give any useful testimony. Cala's counsel objected to the family court watching the interview, but he also stated he did not want a child to be forced to testify in court and he would not cross-examine a child. The family court determined it wanted as much information as possible and stated it would watch M.F.'s interview.

The family court issued its Findings of Fact, Conclusions of Law, and Order (Order) on September 11, 2025, which denied the entry of a DVO. It

determined the only fact it could find by a preponderance of the evidence was that the children both had bruises on their upper arms in October of 2024. The family court then dismissed the DVO petition. Sarah filed a Motion to Alter, Amend, or Vacate, which was denied. This timely appeal follows.

## STANDARD OF REVIEW

"The standard of review of a denial of entry of a domestic violence order is whether the denial was clearly erroneous or that the trial court abused its discretion." *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). Evidentiary rulings are reviewed for abuse of discretion. *Mason v. Commonwealth*, 559 S.W.3d 337, 339 (Ky. 2018). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). A trial court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## ANALYSIS

Sarah appeals the family court's denial of the issuance of a DVO on behalf of the children. Before we proceed with her arguments, we must first consider Cala's argument that Sarah has no standing to bring this appeal. Cala argues only the children's GAL has standing to appeal. We disagree.

The requirement for the family court to appoint a GAL in domestic violence proceedings involving minor children is relatively recent. *Smith v. Doe*, 627 S.W.3d 903 (Ky. 2021), and KRS[2] 403.727, enacted in 2024. There is little case law addressing the direct question of standing of a parent to bring an appeal of the denial of a protective order on behalf of his or her minor children, but there are cases that give guidance on the question.

For example, this Court in *Lankford v. Lankford*, 688 S.W.3d 536 (Ky. App. 2024), reversed the family court for dismissing a DVO petition without a hearing when the Cabinet had not substantiated abuse allegations. In that case, like the present case, the GAL did not file an Appellee brief; the parent brought the appeal. In *Allen v. Newton*, No. 2025-CA-0304-ME, 2026 WL 70757 (Ky. App. Jan. 9, 2026) (unpublished),[3] this Court again vacated the order dismissing the petition for a DVO with instructions to conduct a full evidentiary hearing, even when the child's GAL was the one who moved to dismiss. Sarah has standing to bring this appeal.

Sarah essentially argues the family court erred in not allowing the hearsay testimony of the children to be admitted. She claims the children's therapist and the FOC should have been allowed to testify about the children's

---

[2] Kentucky Revised Statutes.

[3] Cited pursuant to Kentucky Rules of Appellate Procedure (RAP) 41, not binding authority.

statements to them pursuant to the hearsay exceptions in KRE 803(4), or 803(3), or

both. Neither of these arguments has merit.

We pause here to reemphasize what should be apparent but is

sometimes basically ignored by family court practitioners – the KRE apply to

family court to the same degree as in other courts, except when specific provisions

of the law allow consideration of otherwise disallowable evidence to some extent,

such as the FOC process which we will explain. We applaud the family court here

for its insistence on following those rules in response to objections made. The

family court took the time to require the attorneys to explain how the evidence

rules applied to the offered testimony. And the family court got its rulings right.

KRE 803 states:

The following are not excluded by the hearsay rules,
even though the declarant is available as a witness:

. . .

(3) Then existing mental, emotional, or physical
condition. A statement of the declarant's then existing
state of mind, emotion, sensation, or physical condition
(such as intent, plan, motive, design, mental feeling, pain,
and bodily health), but not including a statement of
memory or belief to prove the fact remembered or
believed unless it relates to the execution, revocation,
identification, or terms of declarant's will.

(4) Statements for purposes of medical treatment or
diagnosis. Statements made for purposes of medical
treatment or diagnosis and describing medical history, or
past or present symptoms, pain, or sensations, or the

inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis.

We can easily dispense with subsection (3) for two reasons. First, this argument was never presented to the family court as a reason to justify allowing the hearsay testimony. "As this Court has stated on numerous occasions, appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court. In other words, an appellant preserves for appellate review only those issues fairly brought to the attention of the trial court." *Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012) (internal quotation marks and citations omitted).

At any rate, this exception would not apply. When the therapist was speaking with the children and the children were relaying to her what had occurred to cause their injuries, the children were not describing their *then existing* condition. They were speaking to Ms. Stephens about a "memory or belief to prove the fact remembered" which is explicitly not allowed by that hearsay exception.

Next, Sarah argues the children's therapist should have been allowed to state what the children told her because the statements were made for the purposes of treatment in therapy. She argues the "children were reporting their injuries to Ms. Stephens in order to get her assistance to help them deal with the

heightened anxiety they had been experiencing as Cala's aggression escalated."[4]

She cites *D.L.B. v. Cabinet for Health and Family Services*, 418 S.W.3d 426 (Ky. App. 2014), in which this Court determined it was an abuse of discretion to not allow the children's therapist to testify regarding the children's statements. *D.L.B.* is distinguishable.

*D.L.B.* was a termination action, in which an overall best-interest analysis had to occur. This Court in *D.L.B.* determined the children's statements to their therapist were admissible regarding their present state of mind pertaining to their parents in analyzing their best interests and finding whether the children had been abused or neglected. *Id.* at 431. In the present case, the sole purpose of the testimony was for the children to identify who or what caused the bruising, with the outcome of the proceeding to be either the issuance or a denial of a domestic violence order based on whether abuse by Cala was proven.

Other case law indicates that the children's testimony could have been deemed admissible in other contexts.

> There has been some dispute as to what information is "reasonably pertinent" to diagnosis or treatment. For example, statements identifying the perpetrator have been held "reasonably pertinent" to diagnosis *and* treatment of a child sexual abuse victim where the treatment was for psychological injuries and the abuser lived with the child, the theory being that the abuse would likely continue as

---

[4] Appellant Brief, page 9.

> long as the child remained in the same household with the abuser.

*Garrett v. Commonwealth*, 48 S.W.3d 6, 11 (Ky. 2001). Regardless of any argument advanced by Sarah, the family court had wide discretion in the admission of evidence, and it was not an abuse of discretion to limit the testimony in this instance.

Sarah further argues it was error for the family court to prohibit hearsay testimony from the FOC. In this context, we disagree.

Mr. Stith had been appointed as FOC in the custody dispute between Sarah and Brandon, pursuant to KRS 403.300, which states: "(1) In *contested custody proceedings*, and in other custody proceedings if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child." (Emphasis added.) Mr. Stith was *not* appointed for the purposes of a DVO action, nor would that have been appropriate. There is no corresponding statute allowing such an investigator to be appointed in domestic violence proceedings.

It was clear in the DVO hearing that Mr. Stith was testifying as a fact witness, not as a Friend of the Court in a custody matter in a divorce case. Thus, the hearsay exceptions that apply to FOC reports as outlined in *Greene v. Boyd*, 603 S.W.3d 231 (Ky. 2020), are not applicable to the case at hand. ("[S]tatements contained within the FOC's report that would otherwise amount to hearsay are

-12-

admissible, so long as the parties are given sufficient notice of the report and its sources and the opportunity to refute them as contemplated by KRS 403.300(2)." *Id.* at 240.)

With all of that being said, even if the hearsay testimony of the children was admissible in this instance, based on the remaining circumstances of this case, it would be harmless error. The family court watched M.F.'s CAC interview;[5] the judge heard the statements that would have been testified to by both Ms. Stephens and Mr. Stith. And Sarah conceded that K.F. was incompetent to testify and that her interview would not have been helpful to the family court.

Everyone, including the family court, was well aware of what those hearsay statements would have been. It was clear to everyone that the statements would have been that Cala caused the injuries to the children. Sarah acknowledged as much in her Motion to Alter, Amend, or Vacate, which included a somewhat inconsistent statement: "If [Ms. Stephens] had been permitted to state what everyone knew, then it would have been clear that the injuries to the children were from Cala."[6] If everyone knew, and they did, then there was no need for the hearsay statements to be admitted as further proof.

---

[5] Although Cala objected to this hearsay evidence, she did not file any "protective" cross-appeal on that issue. This is understandable because the statements by the child were insufficient to persuade the family court to find that Cala had committed abuse. There was no ultimate prejudice to Cala from consideration of this evidence.

[6] Motion to Alter, Amend, or Vacate, filed September 21, 2025, Trial Record (TR) at page 82.

-13-

In order to enter a Domestic Violence Order, a trial court is required to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. KRS 403.740. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, *supra*, at 580. The family court made the following findings:

> Findings. Ultimately, the Court can find only one fact in this case by a preponderance of the evidence -- that both children had bruises on their upper arms in October of 2024. Ms. Stephens, Mr. Stith, and Ms. Fisher all testified to this observation, and the bruises are visible in the authenticated exhibits. (The photograph purporting to show bruising or marking on [K.F.] in May of 2025 is less clear and less conclusive.) None of those witnesses testified to observing the cause of the bruises. Ms. Fisher believes the bruises are the result of systemic, escalating physical abuse of the children by Ms. Meikle. Ms. Meikle wholly denies abusing the children or using physical discipline. She attributes the bruises to the children roughhousing, playing football, and/or jumping on the trampoline. The recorded CAC interview of [M.F.] could corroborate either interpretation.

> This Court can only enter the requested DVO if it first finds by a preponderance of the evidence that an act of domestic violence occurred and may again occur. KRS 403.740. Ms. Fisher bears the burden of proof, and she must meet it "subject to the same evidentiary standards as other forms of evidence." *Rankin v. Criswell*, 277 S.W 621, 625 (Ky. App. 2008). In this case, the Court cannot find that Ms. Meikle more likely than not inflicted physical injury on the Petition[er] and

-14-

will do so again. Accordingly, the Petition for a DVO is hereby DENIED.[7]

The family court determined after hearing the testimony and watching M.F.'s CAC interview that the burden for issuing a protective order had not been met. We cannot substitute our judgment for that of the family court. When reviewing the issuance of a protective order, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008).

We give great deference to the trial courts as the finders of fact. "It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness[es]." *Id.*

> A family court operating as finder of fact has extremely broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. A family court is entitled to make its own decisions regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court, unless its findings are clearly erroneous.

*Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007).

---

[7] Findings of Fact, Conclusions of Law, and Order dated September 11, 2025, TR at page 76.

-15-

Sarah has an additional option at her disposal to protect her children, should she still believe that they are being harmed. A parent can always petition the family court for a modification of custody or timesharing. "[B]y saying that a timesharing modification can be done 'whenever' it is in the best interests of the *child* to do so, the legislature effectively gave the family court continuing jurisdiction to hear such motions until the child reaches the age of majority or is emancipated." *Anderson v. Johnson*, 350 S.W.3d 453, 456 (Ky. 2011) (emphasis in original) (footnote omitted). DVO petitions should not take the place of custody determinations based on proper and substantive evidence on all issues relevant to custody, and unsubstantiated allegations in repeated DVO petitions probably do not help such a cause.

We are unaware of the status of the parents' current custody and timesharing arrangement, as that is not the case before us. In a proper proceeding for custody, the FOC, since he was appointed in *that* case, would then be able to perform an investigation, file a report, and then testify as to his findings. But as for *this* case involving a DVO petition, we cannot find an abuse of discretion in the family court's Order regarding the limitations on the FOC's testimony.

**CONCLUSION**

The Fayette Family Court's findings of fact are not clearly erroneous,

and it acted within its discretion in its evidentiary rulings and ultimate decision.

For the foregoing reasons, we affirm the Order of the Fayette Family Court.


ALL CONCUR.



BRIEFS FOR APPELLANT:

Lisa J. Oeltgen
Lexington, Kentucky

BRIEF FOR APPELLEE:

Louis I. Waterman
Prospect, Kentucky